**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CIVIL CASE NO. 9:18-cv-80761 ROSENBERG/REINHART**

HOWARD KLOHR, PHYLLIS L. SMITH, and
TED BOWMAN,

      Plaintiffs,

v.

MID-CONTINENT EXCESS AND SURPLUS
INSURANCE COMPANY.

      Defendant.

_____

MID-CONTINENT EXCESS AND SURPLUS
INSURANCE COMPANY ,

      Counter-Plaintiff,

v.

HOWARD KLOHR, PHYLLIS L. SMITH, and
TED BOWMAN, TRACY A. WILLIAMS, and
FLORIDA STANDARDBRED BREEDERS &
OWNERS ASSN. INC.,

      Counter-Defendants.

_____/

### MID-CONTINENT EXCESS AND SURPLUS INSURANCE COMPANY'S MOTION FOR SUMMARY JUDGMENT

Pursuant to Fed. R. Civ. P. 56, S.D. Fla. L.R. 56.1 and this Court's Orders [DE 12, DE 24, DE 100], Defendant, Mid-Continent Excess and Surplus Lines Insurance Company ("MCES") respectfully requests this Court enter summary judgment in its favor and against Plaintiffs/Counter-Defendants, Howard Klohr ("Mr. Klohr"), Phyllis L. Smith ("Ms. Smith") and Ted Bowman ("Mr. Bowman") (collectively, "Plaintiffs") and against Counter-Defendants Tracy A. Williams ("Ms. Williams") and against Florida Standardbred Breeders & Owners Association, Inc. ("FSBOA").  MCES's Motion for Summary Judgment is based on the undisputed facts set

forth in MCES's Statement of Material Facts ("SMF")[1], the language of the MCES Policy at issue and the applicable law.

There is no genuine dispute as to any material fact, and MCES is entitled to judgment as a matter of law, that it owes Plaintiffs no defense and indemnification obligations under Plaintiffs' Declaratory Relief claim asserted against MCES in their Amended Complaint [SMF, ¶¶ 32-33] including under MCES's Affirmative Defenses numbered 1, 2, 7, 8, 10, 11, 12, 13 [SMF, ¶ 34], as well as under MCES's Third Amended Counterclaim Counts I, II, IV, V [SMF, ¶ 35] and Plaintiffs' Affirmative Defense number 1 [SMF, ¶ 36].  Ms. Williams asserted no affirmative defenses in its answer to MCES's Third Amended Counterclaim, and FSBOA has not yet filed an answer.[2]  MCES's support for this motion is further set forth in the following incorporated Memorandum of Law.

## MEMORANDUM OF LAW

### I.      STATEMENT OF THE CASE

This action arises, in part, from the underlying action captioned, *Tracy A. Williams v. PPI, Inc. d/b/a The Isle Casino and Racing at Pompano Park and/or Isle Casino Racing Pompano Park, et al.*, Broward County Circuit Court Case No. 16014910(25) ("Underlying Action"), in which Ms. Williams sued Plaintiffs, among others, for injuries she allegedly sustained by a horse named Sandshark while she was working at the Isle Casino Racing Pompano Park on October 25, 2015. SMF, ¶¶ 33, 38-41, 45.  As a result of the Underlying Action, Plaintiffs – who are dues-paying members of FSBOA – seek defense and indemnification obligations from MCES by virtue of their claims of insured status under the MCES insurance policy issued to FSBOA. SMF, ¶¶ 27, 32.

Based upon the undisputed facts, MCES is entitled to summary judgment on the following three issues: (1) The MCES Policy Should Be Reformed Due To The Admitted Mutual Mistake Between FSBOA And MCES; (2) MCES Owes No Duty To Defend And Indemnify Plaintiffs For The Underlying Action Because Plaintiffs Fail To Qualify As Insureds Under The

---

[1] MCES has filed a separate Statement of Material Facts in accordance with S.D. Loc. R. 56.1. References to the Statement of Material Facts' paragraphs will appear as (SMF ¶___).

[2] To the extent this Court denies FSBOA's motion to dismiss [DE 86]; MCES reserves its rights to seek this Court's permission to obtain additional discovery, supplement this motion for summary judgment, or otherwise seek relief.

303343230v1 1004183

MCES Policy; and (3) Even If Plaintiffs Qualify As Insureds Under The MCES Policy, MCES Owes No Duty To Defend And Indemnify Plaintiffs For The Underlying Action Because The Athletic Participant Exclusion Precludes Coverage.

## II.    LEGAL STANDARDS

### A.    Standard For Summary Judgment

Summary judgment is appropriate where "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." *See* Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); and *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (finding is no genuine issue of material fact if "the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party . . ."). Rule 56(c) provides that summary judgment should be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to summary judgment as a matter of law." *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "The mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient" to defeat a motion for summary judgment. *See Anderson,* 477 U.S. at 252. Summary judgment procedure is regarded "as an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy and inexpensive determination of every action." *See Celotex*, 477 U.S. at 327.

### B.    Standard For Insurance Contract Interpretation

Under Florida law, "insurance contracts are construed according to their plain meaning." *Garcia v. Federal Ins. Co.*, 969 So. 2d 288, 291 (Fla. 2007). For this reason, a court's inquiry always "begins with a review of the plain language of the insurance policy as bargained for by the parties." *Koikos v. Travelers Ins. Co.*, 849 So. 2d 263, 266 (Fla. 2003). Stated simply, "if a policy provision is clear and unambiguous, it should be enforced according to its terms whether it is a basic policy provision or an exclusionary provision." *Taurus Holdings, Inc. v. U.S. Fid. and Guar. Co.*, 913 So. 2d 528, 532 (Fla. 2005).

### C.    Standard For The Duty to Defend and Duty To Indemnify

Federal courts will follow Florida's state court treatment of the duty to defend. *Underwriters at Lloyd's London v. STD Enterprises, Inc.*, 395 F.Supp.2d 1142, 1145-46 (M.D. Fla. 2005). Under Florida law, the duty to defend is determined by comparing the allegations in

303343230v1 1004183

the underlying complaint to the policy. *Higgins v. State Farm Fire and Cas. Co.*, 894 So. 2d 5, 9-10 (Fla. 2004), *but see Nateman v. Hartford Cas. Ins. Co.*, 544 So. 2d 1026, 1027 (Fla. 3d DCA 1989) (reasoning that "the creation of the basic insurer-insured relationship and the ensuing duty to defend cannot be left to the imagination of the drafter of a complaint . . . and as to who is an insured, the facts as they actually exist must be determinative").  An insurer must defend only when the initial pleadings bring the case within coverage. *Pioneer Nat'l Title Ins. Co. v. Fourth Commerce Props. Corp.*, 487 So. 2d 1051, 1054 (Fla. 1986).  The duty to defend is broader than, and distinct from, the duty to indemnify; thus, where there is no duty to defend, correspondingly, there is no duty to indemnify. *Fun Spree Vacations, Inc. v. Orion Ins. Co.*, 659 So. 2d 419, 421 (Fla. 3d DCA 1995) (citations omitted).

"Under Florida law, an insurer's duty to indemnify is determined by analyzing the policy coverages in light of the actual facts of the underlying case." *Underwriters at Lloyds London v. STD Enterprises, Inc.,* 395 F. Supp. 2d 1142, 1147 (M.D. Fla. 2005); and *Auto Owners Ins. Co. v. Travelers Cas. & Surety Co.*, 227 F. Supp. 2d 1248, 1258 (M.D. Fla. 2002) ("[I]nsurer's duty to indemnify is determined by the underlying facts of the case against insured." (citations omitted)).  "[I]t is well-established law that the duty to indemnify the insured must be measured at the trial level; this duty is not determined by mere allegations but by the facts in the underlying tort action." *Amerisure Mut. Ins. Co. v. Plantation Key Office Park, LLLP*, 11-60136-CIV, 2011 WL 2436693, at \*4 (S.D. Fla. June 14, 2011) (quoting *Penn Millers Ins. Co. v. AG–Mart Produce, Inc.*, Case No. 8:05–CV–1852–T–17TBM, 2006 WL 2864402, at \*1 (M.D. Fla. Oct.5, 2006) *aff'd* 260 Fed. App'x 175 (11th Cir.2007)).

## III.    LAW AND ARGUMENT

### A.    The MCES Policy Should Be Reformed Due To The Admitted Mutual Mistake Between FSBOA And MCES

Plaintiffs have asserted that they are all dues-paying members of FSBOA; thus, as Plaintiffs further assert, their payment of such membership fees entitle them to be covered under the MCES Policy issued to FSBOA. SMF, ¶¶ 27, 33.  Plaintiffs further assert that the MCES Policy's failure to define the term "member," under the Policy's Who Is An Insured provision, constitutes an ambiguity that must be construed in favor of coverage. SMF, ¶¶ 34, 37.  Inherent within Plaintiffs' assertions is the notion that FSBOA must be a limited liability company, since the pertinent reference to "member" in the Policy's Who Is An Insured section is under a

4

provision requiring that FSBOA be identified on the Policy's Declarations Pages as a limited liability company. SMF, ¶¶ 1, 3.  While it is true that FSBOA is currently identified on Policy's Declarations Pages as a limited liability company, it is undisputed that FSBOA is now, and always has been, a corporation. SMF, ¶¶ 1, 8-19.  The identification of FSBOA on the MCES Policy is solely the result of the mutual mistake of FSBOA and MCES.  SMF, ¶¶ 1, 8-19.

As a result of the mutual mistake, MCES requests this Court to reform the MCES Policy, as a matter of law, in order to correct the mutual mistake of FSBOA and MCES that resulted in mistakenly identifying FSBOA as a limited liability company – instead of a corporation – on the MCES Policy's Declarations Pages.  Left uncorrected, this Court may well interpret the improper provisions regarding Who Is An Insured under the MCES policy in which Plaintiffs rely.

In the event that a reformation action is combined with a coverage action, as it is here, Court's should reform the policy before determining coverage.[3]  "The rationale for reformation is that a court sitting in equity does not alter the parties' agreement, but allows the defective instrument to be corrected to reflect the true terms of the agreement the parties actually reached." *Barber v. America's Wholesale Lender*, 542 F. App'x 832, 837 (11th Cir. 2013) (quoting *Circle Mortg. Corp. v. Kline*, 645 So. 2d 75, 78 (Fla. 4th DCA 1994)).  "A reformation claim in no way seeks to interpret or change the agreement of the parties; the goal of a reformation is to correct (*i.e.*, reform) a contract 'so that it accurately reflects the true terms of the agreement actually reached.'" *Regions Bank v. Commonwealth Land Title Ins. Co.*, No. 11-23257-Civ-SCOLA, 2013 U.S. Dist. LEXIS 90504, at *8-9 (S.D. Fla. June 26, 2013) (quoting *Goodall v. Whispering Woods Ctr., L.L.C.*, 990 So. 2d 695, 699 (Fla. 4th DCA 2008)).  Florida courts recognize that addressing reformation should precede a determination of coverage. *See id*. (citing *Boston Old Colony Ins. Co. v. Popple*, 305 So. 2d 877, 878 (Fla. 1st DCA 1974) (addressing reformation question before coverage question).

Here, the pertinent reformation claim is predicated upon the mutual mistake of FSBOA and MCES, which has been fully admitted by FSBOA. SMF, ¶¶ 8-19; *see also BrandsMart U.S.A. of W. Palm Beach, Inc. v. DR Lakes, Inc.*, 901 So. 2d 1004, 1005 (Fla. 5th DCA 2005).  A

---

[3] To the extent the Court denies MCES summary judgment on the issue of reformation, whether on the merits or by virtue of dismissing FSBOA; MCES does not concede that Plaintiffs qualify as Insureds and has included its arguments herein regarding why, as a matter of law, Plaintiffs still fail to qualify as Insureds under the MCES Policy.

cause of action for reformation by mutual mistake is when a contract fails to express the agreement of the parties. *Romo v. Amedex Ins. Co.*, 930 So. 2d 643, 649 (Fla. 3d. DCA 2006).

It is undisputed that FSBOA is, and has been since its creation, a Florida corporation. SMF, ¶¶ 8-19.  It is undisputed that MCES Policy is an insurance contract solely between FSBOA and MCES. SMF, ¶ 1.  At the time FSBOA applied for renewal of its insurance contract with MCES, and despite the fact FSBOA was a corporation, FSBOA was misidentified as an "LLC" on the application. SMF, ¶¶ 12, 16-19.  As a result of the misidentification on the application, MCES issued the policy with FSBOA being misidentified as an "LLC."  SMF, ¶¶ 1, 16-19.  As a result of the foregoing, the MCES Policy does not accurately express the intent of the parties to identify FSBOA as a "CORPORATION" on the Policy's Declaration pages for the June 1, 2015 to June 1, 2016 policy period. SMF, ¶ 17.

### a.       Conclusion for Subpart A.

Based on the undisputed facts, MCES has met the tenets of establishing, as a matter of law, that a mutual mistake has been made that warrants reformation.  Therefore, as a matter of law, this Court should grant summary judgment in favor of MCES and against Plaintiffs, Ms. Williams and FSBOA and reform the MCES Policy to properly express the intended identification of FSBOA as a "CORPORATION" rather than an "LLC" – as referenced on the Declarations pages of the MCES Policy.  This Court should further interpret the MCES Policy – as reformed –regarding all parties' motions for summary judgment as well as for any remaining litigation.

### B.       MCES Owes No Duty To Defend And Indemnify Plaintiffs For The Underlying Action Because Plaintiffs Fail To Qualify As Insureds Under The MCES Policy

Included within the pertinent Coverage A insuring agreement for the MCES Policy is the following statement: "We will have the right and duty to defend the insured against any 'suit' seeking . . . ['bodily injury' or 'property damage'] damages. However, we will have no duty to defend the insured against any 'suit' seeking damages for 'bodily injury' or 'property damage' to which this insurance does not apply." SMF, ¶¶ 2.  Inherent within this statement, and before coverage can even be triggered under the Coverage A insuring agreement, there must be a qualifying insured. SMF, ¶¶ 1, 3-4.  As a matter of law, each of the Plaintiffs fails to qualify as an insured under the MCES Policy.  Because Plaintiffs fail to qualify as Insureds under the

6

MCES Policy, MCES can have no duty to defend and, necessarily, no duty to indemnify Plaintiffs for the Underlying Action.

The Policy defines an "insured" as "any person or organization qualifying as such under Section II — Who Is An Insured." SMF, ¶ 4.  While there are numerous categories under the Who Is An Insured section of the MCES Policy in which a purported insured may qualify as an insured, Plaintiffs fail to qualify as an insured under any provision of the Who Is An Insured section of the MCES Policy. SMF, ¶¶ 3.

Although the duty to defend is generally determined by comparing the allegations in the underlying complaint to the language of the policy, Florida courts have considered evidence extrinsic to the underlying complaint in certain circumstances – such as those presented here. For instance, Florida's Third District Court of Appeal has allowed an insurer to rely on extrinsic evidence to argue that "the alleged insured is not in fact an insured under the policy." *Nateman v. Hartford Cas. Ins. Co.*, 544 So. 2d 1026, 1027 (Fla. 3d DCA 1989) (reasoning that "the creation of the basic insurer-insured relationship and the ensuing duty to defend cannot be left to the imagination of the drafter of a complaint . . . and as to who is an insured, the facts as they actually exist must be determinative").  Specifically, the *Nateman* court – like here – addressed the need to consider extrinsic evidence in order to determine whether a purported insured was, in fact, a qualified insured under the policy.

> At the [*7] outset, we observe that in cases where one is alleged to be an additional insured, it is much more feasible to ascertain initially the question of who is covered as opposed to the issue of what the coverage is. While we acknowledge the viability of the general rule that the allegations of the complaint determine an insurer's duty to defend, it would be imprudent and illogical to confer such a duty upon an insurer as to a party who is not an insured. We agree with the courts cited above that the creation of the basic insurer-insured relationship and the ensuing duty to defend cannot be left to the imagination of the drafter of a complaint, *Navajo Freight Lines, Inc.*, 471 P.2d at 315, and as to who is an insured, the facts as they actually exist must be determinative.

*Id*. at 1027. *Medmarc Cas. Ins. Co. v. SpineFrontier, Inc.*, No. 17-22875-CIV, 2018 U.S. Dist. LEXIS 167710, at *7 (S.D. Fla. Sep. 28, 2018) ("Therefore, under the above-noted exception, this Court must first determine whether Less Institute qualifies as an additional insured under the Policy before determining whether Medmarc has a duty to defend Less Institute.") *See also Nationwide Mut. Fire Ins. Co. v. Kaloust Fin., LLC*, No. 8:12-cv-235-T-33MAP, 2013 U.S. Dist. LEXIS 89864, at *27 (M.D. Fla. June 26, 2013):

303343230v1 1004183

> This case presents the exact circumstances for which the exception articulated in *Nateman* was created. Here, as analyzed in depth below, the facts establish that Barbosa was not an employee of Kaloust; thus, Barbosa does not qualify as an insured under the Policy's terms. As such, Nationwide should not be required to provide a defense or indemnity for Barbosa, a stranger to the Policy, merely because the Underlying Complaint nebulously describes his relationship with Kaloust as a "principal-agent relationship."

*Id*. ("Accordingly, the Court finds it appropriate to look beyond the Underlying Complaint to the facts of the case to determine whether Barbosa was a Kaloust employee, and, thus, an insured under the Policy." *Id*. at \*28)

### 1.    *None of the Plaintiffs are designated in the Declarations of the MCES Policy*

The Who Is An Insured section requires that a purported insured be designated in the Declarations as (1) an individual, (2) a partnership, (3) a joint venture, (4) a limited liability company, (5) an organization other than a partnership, joint venture or limited liability company or (6) a trust. SMF, ¶ 3.  To the extent the purported insured is so designated; such a designated individual or organization qualifies as an insured under the Who Is An Insured section of the MCES Policy.  Any such individual or organization that is designated in the Declarations is also known as the Named Insured. SMF, ¶¶ 1, 3-4.  Other individuals or organizations can also be a Named Insured if designated as such by endorsement, but no such endorsement exists on the Policy. SMF, 1.

Here, in order to qualify as a Named Insured, the Plaintiffs must be designated in the Policy's Declarations as a Named Insured, or otherwise identified as a Named Insured by endorsement. SMF, ¶¶ 1-4.  It is undisputed that only FSBOA is designated as the Named Insured in the Declarations of the MCES Policy. SMF, ¶¶ 1, 4.  It is also undisputed that none of the Plaintiffs are designated in the Declarations of the MCES Policy as a Named Insured, or otherwise designated in the Declarations. SMF, ¶¶ 1, 3-4.  Further, the Policy does not contain any endorsements that identify additional Named Insureds. SMF, ¶ 1.  As a result, and considering there are no endorsements that identify additional Named Insureds, none of the Plaintiffs are designated as a Named Insured by endorsement. SMF, ¶¶ 1-4.  Therefore, and by the plain language of the Policy, each of the Plaintiffs fails to qualify as an insured under the Policy, because none of the Plaintiffs – in their own capacity as a person – have been designated in the Declarations as required by the Who Is An Insured provision under the MCES Policy.

**2.      *None of the Plaintiffs qualify as insureds under the form of business for which FSBOA is designated in the Declarations of the MCES Policy***

As discussed in the previous section, the fact that Plaintiffs were not designated in the Declarations of the MCES Policy was enough to preclude their status as an insured – regardless of the category of designation, i.e., (1) an individual, (2) a partnership, (3) a joint venture, (4) a limited liability company, (5) an organization other than a partnership, joint venture or limited liability company or (6) a trust. SMF, ¶ 1, 3.  Here, a purported insured may qualify as an insured under the Who Is An Insured section by virtue of the Named Insured's category of designation in the Declarations. SMF, ¶ 3.  The limitation on insured status, however, is twofold: (1) the purported insured can only qualify as an insured under the category for which the Named Insured is designated; and (2) the purported insured must fulfill any requirements within such categories. In other words, FSBOA's designation in the Declarations dictates which category Plaintiffs can seek insured status. SMF, 1, 3-4.

Of the six categories identified in the Policy under subparagraph 1. of the Who Is An Insured section, it is undisputed that FSBOA is not an individual, not a partnership, not a joint venture and not a trust. SMF, ¶ 1, 3-4, 8-19.  As a result, Plaintiffs cannot qualify as an insured under any of these four categories.  For example, FSBOA is not designated as an "individual" in the Declarations; thus, neither the Plaintiffs nor any respective spouse of the Plaintiffs can qualify as an insured – simply because FSBOA is not designated as an individual in the Declarations. SMF, ¶¶ 1, 3-4.

As a result of the mutual mistake between MCES and FSBOA, however, FSBOA is improperly designated in the Declarations as a limited liability company – instead of being correctly designated as a corporation. SMF, ¶¶ 1, 16-19.  It is upon this mistaken designation in the Declarations that Plaintiffs rely to make their assertions of insured status. SMF, ¶¶ 33-34, 37. As noted above, and in light of the pending reformation count, MCES will present alternative arguments that Plaintiffs still fail to qualify as insureds under the Who Is An Insured section of the MCES Policy, as a matter of law, regardless of whether FSBOA is ultimately designated as a limited liability company or designated as a corporation in the Declarations.

Assuming this Court reforms the MCES Policy as requested herein, FSBOA's designation in the Declarations will properly reflect its status as a corporation. SMF, ¶¶ 8-19.  According to the Who Is An Insured section, if FSBOA is designated as a corporation then Plaintiffs can only

qualify as insureds if they are (1) FSBOA's "executive officers" or directors; and (2) only with respect to their duties as FSBOA's officers or directors. SMF, ¶ 3.  Plaintiffs must qualify under both tenets or fail to qualify as insureds under the MCES Policy. SMF, ¶ 3.  Here, is it unnecessary to evaluate whether Plaintiffs were acting with respect to their duties as officers or directors, because it is undisputed that none of the Plaintiffs were executive officers or directors of FSBOA at the time Ms. Williams sustained her alleged injuries on October 25, 2015, which is the basis of the Underlying Action. SMF, ¶¶ 3, 20-21.

Likewise, if FSBOA is designated as a corporation then Plaintiffs can only qualify as insureds if they are (1) FSBOA's stockholders; and (2) only with respect to their liability as FSBOA's stockholders. SMF, ¶ 3.  Again, Plaintiffs must qualify under both tenets or fail to qualify as insureds under the MCES Policy. SMF, ¶ 3.  Here, is it again unnecessary to evaluate whether Plaintiffs were acting with respect to their liability as stockholders, because it is undisputed that none of the Plaintiffs were stockholders of FSBOA at the time Ms. Williams sustained her alleged injuries on October 25, 2015, which is the basis of the Underlying Action. SMF, ¶¶ 3, 22.

Based on the foregoing and to the extent this Court reforms the Policy to designate FSBOA as a corporation; the plain language of the Policy clearly precludes insured status to the Plaintiffs because none of the Plaintiffs constitute FSBOA's executive officers, directors or stockholders. SMF, ¶¶ 3, 20-22.

In the alternative and only to the extent this Court does not reform the MCES Policy, FSBOA's designation in the Declarations will improperly reflect its status as a limited liability company. SMF, ¶ 1.  In such an instance that FSBOA is deemed to be designated as a limited liability company, then Plaintiffs must qualify one of two ways: (1) Plaintiffs must be members of FSBOA "with respect to the conduct of [FSBOA's] business;" or (2) Plaintiffs must be managers of FSBOA " but only with respect to their duties as [FSBOA's] managers." SMF, ¶ 3. Here, it is undisputed that none of the Plaintiffs were managers; thus, Plaintiffs cannot qualify as an insured under the second option. SMF, ¶¶ 3, 26.

As it respects whether Plaintiffs are members with respect to the conduct of FSBOA's business of FSBOA, Plaintiffs must (1) establish that they are, in fact, members of FSBOA **and** (2) establish that their member status was with respect to the conduct of FSBOA's business. SMF, ¶ 3.  While MCES does not dispute that Plaintiffs paid annual dues to FSBOA in order to

10

establish their respective membership in the FSBOA, such dues-paying "members" do not automatically trigger insured status without consideration of the conduct of FSBOA's business. SMF, ¶¶ 8-19, 27-31.

Plaintiffs attempt to create insured status under the MCES Policy by arguing that the undefined term, member, is ambiguous; that is, Plaintiffs assert that because they are dues-paying members of FSBOA, and "member" is undefined in the Policy, Plaintiffs qualify as insureds under the Who Is An Insured section. SMF, ¶¶ 33-34.  It is axiomatic under Florida law that "a policy provision is ambiguous only if 'susceptible to more than one reasonable interpretation, one providing coverage and the []other limiting coverage.' . . . And 'in construing insurance policies, courts should read each policy as a whole, endeavoring to give every provision its full meaning and operative effect.'" *Shaw v. Nat'l Union Fire Ins. Co.*, 605 F.3d 1250, 1252 (11th Cir. 2010) (quoting *Auto-Owners Ins. Co. v. Anderson*, 756 So. 2d 29, 34 (Fla. 2000)).  In such a scenario, the Court will construe an ambiguous provision in favor of coverage. That being said, Plaintiffs' argument that as dues-paying members they qualify as insureds is not a reasonable interpretation since the provision requires insured status if qualifying members are acting with respect to the conduct of the business, and Plaintiffs cannot establish that their member status was with respect to the conduct of FSBOA's business. SMF, ¶¶ 8-19, 27-31.

"[Courts should read each policy as a whole, endeavoring to give every provision its full meaning and operative effect." *Hegel v. First Liberty Ins. Corp.*, 778 F.3d 1214, 1219 (11th Cir. 2015).  This venerable tenet of insurance law requires that the Court look to the Who Is An Insured section identifying the six previously mentioned categories in which FSBOA can be designated in the Declarations.  Regardless of the category designated, there is a pattern and consistency to the additional individuals and organizations that can "piggyback" into insured status.  For example, if a Named Insured is designated as an individual, then the spouse can be an insured *but only with respect to the conduct of a business*.  For partnerships or joint ventures, members, partners and spouses can be insureds *but only with respect to the conduct of your business*.  For corporations, officers, directors and stockholders can be insured *but only with respect to their duties or liability*. For trusts, trustees can qualify as an insured *but only with respect to their duties*.  For each of the foregoing examples, the policy terms require that a purported insured must be acting with respect to the conduct of the designated insured or must be

11

acting in a capacity that matches the category, i.e., trustee must act with respect to its duties as trustee.  In other words, the policy provisions clearly relate the purported insured to the action.

Revisiting the limited liability company, members can be insureds *but only with respect to the conduct of the designated insured's business*. SMF, ¶ 3.  Plaintiffs fail to look at the context of the relationship between the "member" and the conduct of the business.  Even if this Court accepts Plaintiffs' broad definition of "member," as a matter of law, Plaintiffs cannot establish that they were acting with respect to the conduct of FSBOA's business.  "[C]ourts in and outside Florida have found the phrase 'with respect to the conduct of a business' facially unambiguous." *Nationwide Ins. Co. of Am. v. Calabrese*, No. 13-CIV-81145, 2015 U.S. Dist. LEXIS 35794, at *12-16 (S.D. Fla. Mar. 20, 2015) (quoting *Nova Cas. Co. v. Anderson*, 2005 U.S. Dist. LEXIS 31890, 2005 WL 3336496, at *3 (M.D. Fla. Dec. 8, 2005)).  However, "[t]he phrase 'conduct of business' requires a focus on the purported insured's activity in determining whether the conduct of the business owner was business or personal." *Id. See Spencer v. Assurance Co. of Am.*, 39 F.3d 1146, 1150 (11th Cir. 1994) (concluding that conduct of the insured's employee was outside the scope of employment and accordingly not covered because the "case lack[ed] a sufficient nexus between the employee's job and his battery of another to raise even a jury question as to the scope of employment issue."); and *Nationwide Ins. Co. of Am. v. Calabrese*, No. 13-CIV-81145, 2015 U.S. Dist. LEXIS 35794, at *16 (S.D. Fla. Mar. 20, 2015) ("Because the repair to the roof was not done 'with respect to the conduct of [the catering] business,' there is no coverage for Lopez's claims against Calabrese or Florida Caterers in the Underlying Action and no obligation to indemnity under the Policy. Since there is no obligation to indemnify, Nationwide has no duty under the Policy to defend Calabrese or any of his affiliated entities in the Underlying Action.").  *See also Underwriters at Lloyds London v. STD Enterprises, Inc.*, 395 F. Supp. 2d 1142, 1146 (M.D. Fla. 2005) ("[T]the duty to defend ceases when it is shown that there is no potential for coverage, i.e., when there is no duty to indemnify."); and *Fla. Physicians Ins. Co. v. G. William Lazenby, M.D., P.A.*, 576 So. 2d 794, 795 (Fla. 2d DCA 1991) (insurer duty to defend ends when proven that action is outside scope of policy coverage).

Here, it is undisputed that FSBOA's business does not concern horse racing or horse breeding. SMF, ¶¶ 28-31.  It is undisputed that Plaintiffs have been sued in their capacities as horse owners and/or horse drivers. SMF, ¶¶ 40-41.  There is clearly no nexus between the

respective horse ownership and horse driving by Plaintiffs with respect the conduct of FSBOA's business.  As a result, Plaintiffs fail to qualify as an insured even to the extent FSBOA remains designated as a limited liability company.

> **3.      *None of the Plaintiffs qualify as insureds under the remaining categories identified in the Who Is An Insured section of the MCES Policy***

Of the six remaining categories under the Who Is An Insured section for which a purported insured might qualify as an insured, three do not require analysis since two of them require the death of FSBOA, which is neither possible nor applicable here, and one requires Plaintiffs to be an organization, which is also not applicable here, since Plaintiffs are obviously individuals.  Specifically, Plaintiffs last chance to qualify as an insured is if they were: (1) FSBOA volunteer workers performing duties related to the conduct of FSBOA's business; (2) FSBOA employees " but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business;" or (3) FSBOA's real estate manager. SMF, ¶ 3.

It is undisputed that none of the Plaintiffs were volunteers, employees or real estate managers of FSBOA at the time Ms. Williams sustained her alleged injuries on October 25, 2015, which is the basis of the Underlying Action. SMF, ¶¶ 23-25.  As such, the plain language of the Policy clearly precludes insured status to the Plaintiffs because none of the Plaintiffs constitute FSBOA's volunteers, employees or real estate managers. SMF, ¶¶ 23-25.  Therefore, as a matter of law, Plaintiffs fail to qualify as insureds under the MCES Policy.

> **4.      *None of the Plaintiffs qualify as additional insureds or indemnitees under the MCES Policy***

It should also be noted that the MCES Policy contains no additional insured endorsements; thus, none of the Plaintiffs can qualify as an additional insured. SMF, ¶ 1. Likewise, none of the Plaintiffs qualify as an indemnitee under the Supplementary Payments section of the MCES Policy because a contract is required. SMF, ¶¶ 1, 5-6.  It is undisputed that no contractual relationship existed between FSBOA and the Plaintiffs even if Plaintiffs are deemed to be members by virtue of their payment of membership dues. SMF, ¶ 29.  As such, the plain language of the Policy clearly precludes additional insured/indemnitee status to the Plaintiffs because the policy is devoid of additional insured endorsements and no contractual

303343230v1 1004183

relationship existed between FSBOA and Plaintiffs.  Therefore, as a matter of law, Plaintiffs fail to qualify as additional insureds and indemnitees under the MCES Policy.

### a.    Conclusion for Subpart B.

Based on the foregoing discussion within the four divisions to Subpart B, as a matter of law, Plaintiffs fail to qualify as insureds and/or indemnitees under the MCES Policy and this should Court find summary judgment in favor of MCES and declare against Plaintiffs, Ms. Williams and FSBOA that MCES has neither the duty to defend nor the duty to indemnify Plaintiffs for the Underlying Action.  To the extent this Court finds that Plaintiffs fail to qualify as insureds under the Policy; this Court, as a matter of law, must find summary judgment in favor of MCES and declare against Plaintiffs, Ms. Williams and FSBOA that MCES has neither the duty to defend nor the duty to indemnify Plaintiffs for the Underlying Action since the insuring agreement cannot be triggered without a qualifying insured.  Likewise, Plaintiffs failure to qualify as an indemnitee under the Supplementary Payments provision of the MCES Policy warrants this Court find summary judgment in favor of MCES and declare against Plaintiffs, Ms. Williams and FSBOA that MCES has neither the duty to defend nor the duty to indemnify Plaintiffs for the Underlying Action.

### C.    Even If Plaintiffs Qualify As Insureds Under The MCES Policy, MCES Owes No Duty To Defend And Indemnify Plaintiffs For The Underlying Action Because The Athletic Participant Exclusion Precludes Coverage

The MCES Policy includes the following exclusion for athletic participants, in pertinent part: "This insurance does not apply to **bodily injury** to any person engaged in: **1.** Any athletic exercise or sports **activity** . . . **"Activity"** as used herein includes travel or activity in the course of travel to or from any destination for the purpose of practicing for or participating in any such athletic, exercise or sports activity." SMF, ¶ 7.  In order to apply this exclusion, Ms. Williams must be determined to have been engaged in an athletic exercise or sports activity at the time of her alleged injuries. SMF, ¶ 7.

The term "engaged" is not defined in the Policy.  The law is well-settled in Florida that the language in an insurance contract should be read in the light of the skill and experience of ordinary people, and resort should not be made to uncommon meanings nor contextual distortion. *Midwest Mutual Insurance Co. v. Santiesteban*, 287 So.2d 665 (Fla. 1973). Therefore, according to Webster's, engaged means "1 : involved in activity . . ." https://www.merriam-webster.com/dictionary/engaged.

303343230v1 1004183

As it respects the term "sport," it has been addressed by the Florida judiciary as follows:

Instead, the term "sport" has been defined as "a source of diversion[;] recreation . . . physical activity engaged in for pleasure." *Zurich*, 82 F. Supp. 2d at 1256; *see also Nautilus v. Jesse James Festival, Inc.*, 269 S.W.3d 442, 446 (Mo. Ct. App. 2008) (defining "sport" as "physical exertion or recreation engaged in for pleasure"); *Merriam Webster's Collegiate Dictionary* [*1351] 1207 (11th ed. 2007) (defining "sport" as "a source of diversion . . . [r]ecreation . . . . physical activity engaged in for pleasure . . . a particular activity (as an athletic game) so engaged in"); *Webster's Third New International Dictionary* 2206 (2002) (defining "sport" as "something that is a source of pleasant diversion . . . a pleasing or amusing pastime or activity . . . [r]ecreation"; "a particular play, game, or mode of amusement").

*Volusia Cty. Cattlemen's Ass'n v. W. World Ins. Co.*, 218 F. Supp. 3d 1343, 1350-51 (M.D. Fla. 2016).

According to the Underlying Amended Complaint, Ms. Williams asserted allegations against Mr. Klohr and Ms. Smith, among others, that they "failed to make reasonable and prudent efforts to **determine the ability of the participant** Defendant TED BOWMAN, the rider/driver of Sandshark or the harness, and/or TRACY A. WILLIAMS **to engage safely in the equine activity**, or the **determine the ability of the participant**, Defendant TED BOWMAN, the rider/driver of Sandshark or the harness, and/or TRACY A. WILLIAMS, **to safely manage the equine** (Sandshark) based on the participant's, rider's and/or TRACY A. WILLIAMS representation of his or her ability." SMF, ¶ 44 (emphasis added).  Ms. Williams further asserts that Ms. Smith, Mr. Klohr and Mr. Bowman, among others, "committed acts or omissions that a reasonably prudent person would not have done or omitted under the same or similar circumstances. Such acts or omissions constituted willful or wanton **disregard for the safety of the participant** and/or TRACY A. WILLIAMS, and such acts or omissions were a legal, direct and proximate cause of the injuries to TRACY A. WILLIAMS." SMF, ¶ 45 (emphasis added). Ms. Williams also asserts that "At no point in time since this most unfortunate occurrence have the Defendants provided any **workers compensation benefits and/or coverage** to the Plaintiff, TRACY A. WILLIAMS." SMF, ¶ 43 (emphasis added).

Based on the allegations of the Underlying Action, which is attached and incorporated into Plaintiffs' action against MECS, Ms. Williams identified herself as a "participant" and alleged – multiple times – of her obvious engagement in the harness racing to which she alleged caused her injuries. SMF, ¶¶ 42-45.   Likewise, she referenced not receiving workers

15

compensation, which further demonstrates the level to which Ms. Williams was engaged in the sporting activity of harness racing. SMF, ¶ 43.  To clarify, rewriting the exclusion while inserting the pertinent facts from the Underlying Action, it is undisputed that Ms. Williams was engaged in a sports activity at the time of her alleged injuries: "This insurance does not apply to bodily injury to any person [Ms. Williams] engaged in: 1. . . . sports activity [harness racing]. . ."

###### a.     Conclusion for Subpart C.

Based on the foregoing, even if Plaintiffs are deemed to be insureds under the MCES Policy, the Athletic Participant exclusion precludes Ms. Williams's claims of bodily injury for her engagement in a sports activity.  Because the allegations of the Underlying Amended Complaint clearly establish that Ms. Williams was engaged in a sports activity at the time of her alleged injuries, this should Court find summary judgment in favor of MCES and declare against Plaintiffs, Ms. Williams and FSBOA that MCES has neither the duty to defend nor the duty to indemnify Plaintiffs for the Underlying Action.

Respectfully submitted,

HINSHAW & CULBERTSON LLP

*/s/Edward T. Sylvester*
**EDWARD SYLVESTER**
Florida Bar No. 051612
esylvester@hinshawlaw.com
2525 Ponce De Leon Boulevard, 4th Floor
Coral Gables, Florida 33134
Telephone: 305-358-7747
Facsimile: 305-577-1063
*Counsel for Mid-Continent E&S Ins. Co.*

16

303343230v1 1004183

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that, on March 12, 2019, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.  I certify that I am unaware of any non-CM/ECF participants.

HINSHAW & CULBERTSON LLP

*/s/Edward T. Sylvester*
**EDWARD SYLVESTER**
Florida Bar No. 051612
esylvester@hinshawlaw.com
2525 Ponce De Leon Boulevard, 4th Floor
Coral Gables, Florida 33134
Telephone: 305-358-7747
Facsimile: 305-577-1063
*Counsel for Mid-Continent E&S Ins. Co.*

303343230v1 1004183